# EXHIBIT B

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REPUBLIC OF KAZAKHSTAN,<br><br>            Plaintiff,<br><br>    v.<br><br>DOES 1 TO 100, INCLUSIVE,<br><br>            Defendants. | No. 2:15-mc-0159-TLN-KJN<br><br>ORDER |

       Plaintiff The Republic of Kazakhstan ("Kazakhstan"), a sovereign nation, commenced this miscellaneous civil action and filed a motion to compel compliance with a subpoena issued to non-party Facebook, Inc. ("Facebook"). (ECF Nos. 1, 6.) Facebook and other non-parties, Respublika and LLC Media-Consult, have opposed the motion, and Kazakhstan filed a reply brief. (ECF Nos. 22, 24, 28.)[1]

       After carefully considering the parties' written briefing, the court's record, and the applicable law, the court DENIES the motion without prejudice.[2]

---

[1] Based on the parties' stipulation, and for good cause shown, the court approved a special briefing schedule with respect to the motion. (ECF No. 20.)

[2] On the court's own motion and pursuant to Local Rule 230(g), the motion was submitted for decision without oral argument on the record and written briefing.

1

BACKGROUND[3]

Kazakhstan alleges that, in or before August 2014, its governmental computer systems and the email accounts of some of its government personnel were illegally hacked by unknown individuals, who thereby obtained access to thousands of sensitive, proprietary, confidential, and attorney-client privileged government documents (the "Materials"). (ECF Nos. 7 at 4, 8-23 at 9.) Starting in August 2014, a substantial amount of the Materials were uploaded on an archive website, https://mega.co.nza, hosted by Mega Limited ("Mega"), a company based in New Zealand. (ECF No. 8-23 at 10.) Links to the archives of Materials on the Mega website were also posted on another website, http://www.kazaword.wordpress.com (the "Kazaword Website"). (Id.; ECF No. 24 at 8.) However, according to Kazakhstan, it first discovered the alleged hackings around January or February 2015, when Respublika made two initial posts containing some of the Materials on its Facebook page. (ECF Nos. 7 at 6, 8-23 at 9-10.) Since then, more of the Materials have been posted by Respublika on its Facebook page (the "Respublika Facebook Page"), and on its own website (the "Respublika Website"), as well as by an individual named Muratbek Ketebaev ("Ketebaev") on his own Facebook page (the "Ketebaev Facebook Page"). (ECF No. 7 at 6.)

On March 12, 2015, Kazakhstan commenced an action in the United States District Court for the Southern District of New York against Doe defendants (i.e., the unknown persons who purportedly perpetrated the hackings), alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), see 1:15-cv-1900-ER-HBP (S.D.N.Y.) (the "Main Action"). (ECF No. 7 at 6.) The next day, on March 13, 2015, the assigned district judge, Judge Edgardo Ramos, issued a temporary restraining order ("TRO") enjoining the "Defendants, their affiliates

---

[3] The background facts, disputed and undisputed, are taken from the parties' filings in this miscellaneous action as well as the main action pending in the United States District Court for the Southern District of New York. The court outlines such background facts for the sole purpose of providing some context for the court's resolution of the pending motion, and nothing in this order should be construed so as to make any binding factual findings for purposes of the case overall. Citations to the docket in this miscellaneous action are styled "ECF No. __" and citations to the docket in the main action pending in the Southern District of New York, Case No. 1:15-cv-1900-ER-HBP, are styled "Main Action ECF No. __."

employees, agents, and representatives, and all persons acting in concert with or participating with Defendants," from "using, disclosing, disseminating, posting, displaying, sharing, distributing, hosting, copying, viewing, accessing, providing access to or making available to anyone, in any manner whatsoever," the Materials. (ECF Nos. 7 at 7, 8-7 at 2-3.) Within days of issuance of the TRO, of which a notice was posted on the Respublika Facebook Page, the two initial posts containing the Materials were removed from the Respublika Facebook Page. (ECF No. 7 at 7.) However, posting of the Materials subsequently resumed on the Respublika Facebook Page, the Respublika Website, and the Ketebaev Facebook Page. (Id. at 8-9.) After a March 20, 2015 hearing, at which only Kazakhstan appeared, Judge Ramos essentially converted the TRO into a preliminary injunction. (Id. at 7-8.)

Subsequently, on June 25, 2015, Respublika and its owner, LLC Media-Consult (collectively, "Respublika"), entered some type of special appearance in the Main Action as interested non-parties, and ultimately filed a motion for clarification of the preliminary injunction on August 4, 2015. (Main Action ECF Nos. 28, 35.) In short, Respublika asserted that it is a newspaper, presently only available online, that frequently criticizes the Kazakhstan government and has (along with its individual journalists) allegedly been subjected to a campaign of harassment and intimidation by the Kazakhstan government in Kazakhstan and other countries, including criminal charges, civil suits, seizures, arrests, and firebombs. According to Respublika, it has not been involved with any hackers, nor has it instructed or encouraged any unauthorized access to the Materials. Instead, Respublika obtained the Materials from the Kazaword Website and other sources, and then reported on the Materials and republished them in its capacity as a news organization. Nevertheless, Kazakhstan had allegedly been using the court's preliminary injunction to pressure Facebook and the web host of Respublika's website, Black Lotus Communications, to remove Respublika's posts and articles regarding the Materials. Respublika argued that application of the court's order to block Respublika's publication, as a news organization, of posts and articles regarding the Materials violates the First Amendment, and is part of Kazakhstan's long-standing campaign to censor Respublika and remove criticism of Kazakhstan's government from the Internet. As such, Respublika requested Judge Ramos to

clarify that Respublika was not subject to the preliminary injunction. (See generally Main Action ECF Nos. 28, 35.)

In its August 25, 2015 opposition to the motion for clarification, Kazakhstan disputed many of Respublika's contentions. According to Kazakhstan, Respublika and Ketebaev, who is the husband of the editor and founder of Respublika, Iryna Petrushova, have been using the Materials to promote the cause of Mukhtar Ablyazov, who was allegedly convicted of theft from a bank in Kazakhstan and who is purportedly a prime suspect in, and major beneficiary of, the alleged hacking. More specifically, Kazakhstan contends that Respublika and Ketebaev have been using the Materials as part of an ongoing propaganda campaign that portrays Ablyazov and his accomplices as innocent victims of a frame-up orchestrated by the Kazakhstan government, and that Respublika is actually receiving financial support from Ablyazov. In light of those contentions, Kazakhstan argued that it was entitled to expedited discovery and an evidentiary hearing to determine whether Respublika and Ketebaev were acting in concert or participation with the hackers, thereby forfeiting their First Amendment protection. (See generally Main Action ECF No. 43; see also ECF No. 7.)

In an order dated October 27, 2015, Judge Ramos, declining to conduct an evidentiary hearing, granted Respublika's motion for clarification and found, based on the record before him, that the preliminary injunction did not apply to Respublika. (Main Action ECF No. 57.) The order reasoned that Kazakhstan had not established a likelihood of success on the merits against Respublika, because it did not have "sufficient evidence to indicate that Respublika was in any way responsible for the alleged hacking or acted in concert with the hackers." (Id.) The order further stated, in part, that:

> The fact that Respublika may have used or posted certain of the Stolen Materials on its website, is not, without more, sufficient to subject it to the Injunction. The First Amendment grants persons a near absolute right to publish truthful information about matters of public interest that they lawfully acquire. See Smith v. Daily Mail Publishing Co., 443 U.S. 97, 103 (1979). The Supreme Court affirmed that the Daily Mail rule applies even if a re-publisher of information that is of public concern knew that its source had obtained the information illegally. See Bartnicki v. Vopper, 532 U.S. 514, 535 (2001). Thus, the Daily Mail rule protects the publication of the kazaword documents by anyone other than those

    directly involved in their purported theft.  *Daily Mail Publishing Co.*, 443 U.S. at 103.

(Id.)  However, Judge Ramos noted that the order was without prejudice to Kazakhstan's ability to reapply for the imposition of the injunction against Respublika should Kazakhstan obtain sufficient evidence to support such an order.  (Id.)

  Thereafter, on November 12, 2015, Kazakhstan served the subpoena at issue in this action on Facebook.  (ECF No. 1, Ex. 1.)  The subpoena essentially requests Facebook to produce documents sufficient to show the names, email addresses, IP addresses, and MAC addresses of: (1) the administrators and user, respectively, of the Respublika Facebook Page and the Ketebaev Facebook Page; (2) the users of the Facebook accounts who removed the initial posts of Materials on the Respublika Facebook Page; and (3) the users of the Facebook accounts that created the subsequent posts of Materials on the Respublika Facebook Page and the Ketebaev Facebook Page, for the time period of March 13, 2015 to the present.  (Id.)  The subpoena called for production of the documents on December 2, 2015, in Sacramento, California.  (Id.)  Facebook and Respublika both strongly object to the subpoena, and no documents were ultimately produced.  Despite extensive meet-and-confer efforts, Kazakhstan, Facebook, and Respublika were unable to reach an informal resolution of their discovery dispute.  Consequently, this miscellaneous action and motion to compel Facebook's compliance with the subpoena were filed on December 10, 2015, and December 15, 2015, respectively.

DISCUSSION

  Kazakhstan's motion to compel, which was extensively briefed with voluminous supporting materials, raises interesting and complex issues involving, *inter alia*, the intersection of the rights of an alleged hacking victim to discover the identity of the purported hackers with the well-established reporters' privilege rooted in the First Amendment, all against a backdrop of troubling international conflicts.  As noted above, the court has carefully reviewed all the submitted materials for the limited purpose of providing context for the parties' discovery dispute.[4]  However, as a threshold matter, Facebook contends that Kazakhstan has not received

---

[4] The court has not considered the "Notice of New Authority Relevant to Issues on Review," with

proper authorization in the Main Action to issue the subpoena to Facebook. For the reasons discussed below, the court agrees, and thus ultimately declines to reach the more substantive issues raised by the motion.

Federal Rule of Civil Procedure 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). Here, a Rule 26(f) conference has not taken place, because Kazakhstan has yet to identify and serve any defendants with whom to confer.[5] Nor does Kazakhstan contend that the Main Action is a proceeding exempt from initial disclosure under Rule 26(a)(1)(B), or that the Federal Rules of Civil Procedure have otherwise expressly authorized issuance of the Facebook subpoena. Furthermore, Facebook and Respublika have not stipulated to issuance of that subpoena. Therefore, unless such expedited discovery was authorized by court order, the subpoena must be quashed. See Deuss v. Siso, 2014 WL 4275715, at *5 (N.D. Cal. Aug. 29, 2014) (quashing subpoena issued to non-party without authorization prior to Rule 26(f) conference); Desilva v. N. Shore-Long Island Jewish Health Sys. Inc., 2010 WL 3119629, at *1 (E.D.N.Y. Aug. 9, 2010) (same).

Kazakhstan primarily contends that the subpoena to Facebook was authorized, because the Southern District of New York has already authorized discovery to be taken from Respublika and Ketebaev on topics purportedly similar to the subject matter of the subpoena issued to Facebook. That argument is unavailing. On October 28, 2015, Judge Ramos, after narrowing the proposed scope of questions, granted Kazakhstan's motion for the issuance of a Letter of Request to the Central Authority of the Republic of Poland for assistance in obtaining the deposition testimony

---

an attached opinion by the Court of Appeals of the State of Washington, filed by Respublika after submission of the instant motion. (ECF No. 30.) As such, Kazakhstan's objections to that filing (ECF No. 32) are dismissed as moot.

[5] To be sure, Kazakhstan has met and conferred extensively with Respublika and Facebook with respect to this discovery dispute. However, Respublika and Facebook have not been named as parties to the Main Action, and therefore such meet-and-confer efforts did not amount to a Rule 26(f) conference between parties.

6

1  of Ketebaev. (Main Action ECF Nos. 61, 65.) Thereafter, on November 13, 2015, the assigned
2  magistrate judge, Judge Henry Pitman, also granted in part Kazakhstan's motion for expedited
3  discovery and authorized Kazakhstan to take a Rule 30(b)(6) deposition of Respublika as a non-
4  party witness with respect to specified topics, with the deposition to take place in London, United
5  Kingdom. (Main Action ECF No. 69.) Even assuming, without deciding, that the subject matter
6  of the Facebook subpoena is similar to the topics of questioning authorized in the above-
7  mentioned orders, those orders plainly did not authorize any expedited third-party discovery from
8  Facebook.
9        Kazakhstan also argues that Judge Ramos, at the March 20, 2015 hearing on Kazakhstan's
10  motion for a preliminary injunction, broadly authorized expedited discovery, including the
11  subpoena to Facebook, based on his finding that Kazakhstan met the standard for a preliminary
12  injunction. (ECF No. 7 at 8.) However, the court ultimately finds that argument unpersuasive
13  when the entire record in the Main Action is considered. As an initial matter, Judge Ramos did
14  not issue any written order authorizing such expedited discovery. Indeed, the order following the
15  March 20, 2015 hearing, at which only Kazakhstan appeared, merely granted the preliminary
16  injunction, but did not reference or define the scope of any expedited discovery. (See Main
17  Action ECF No. 10.) Moreover, even if Judge Ramos had intended to broadly authorize such
18  expedited discovery orally at that time, subsequent case events strongly call into question whether
19  such potential authorization remains operative. Most notably, Judge Ramos subsequently
20  clarified that the preliminary injunction did not apply to Respublika, finding that Kazakhstan had
21  not established a likelihood of success on the merits against Respublika. As such, the court finds
22  it implausible that broad and essentially undefined expedited discovery with respect to
23  Respublika and affiliated persons remains authorized, if indeed it was initially authorized.[6]
24  Additionally, since the March 20, 2015 hearing in the Main Action, Kazakhstan actually
25  requested, and was granted, leave to conduct specific expedited discovery involving Respublika

---

[6] Kazakhstan characterizes the "judicially-approved purpose" of the discovery sought as follows: "to find out who posted [Stolen Materials] on these websites and to use the discovery process to go as far as we can to try to identify who the posters are or who is behind the websites[.]" (ECF No. 28 at 13.)

7

and Ketebaev. As noted above, Kazakhstan was authorized to take the depositions of Respublika and Ketebaev with respect to defined topics. Such more specific authorizations further belie the continued existence of any broad, essentially undefined authorization to conduct expedited discovery.

Therefore, based on the record before the court in this action and in the Main Action, the court finds that Kazakhstan's subpoena to Facebook is unauthorized and must be quashed, but without prejudice to its reissuance at a later juncture upon appropriate authorization from the Southern District of New York.

In many cases, the authorization of expedited discovery by court order may be relatively straightforward and involve largely matters of case scheduling and logistics. However, in this case, the court deems it particularly important that the scope of authorized expedited discovery directed to Facebook, if any, be clearly defined, for the reasons discussed below.

As a preliminary matter, the court has some concerns regarding the proposed discovery from Facebook in light of Judge Ramos's holding that Kazakhstan had not established a likelihood of success on the merits against Respublika and that the preliminary injunction did not apply to Respublika. Kazakhstan essentially argues that it wishes to compare the IP addresses likely to be produced in response to the Facebook subpoena (i.e. those associated with the administrators, users, and posters on the Respublika Facebook Page and the Ketebaev Facebook Page) with the known IP addresses of computers that were used to access the allegedly hacked accounts during the relevant time periods, hoping to find a match leading to discovery of the hackers' identities. But that type of discovery at least appears to come dangerously close to a fishing expedition, particularly given that it involves non-parties, whose identities are clearly known to Kazakhstan, but against whom Kazakhstan has yet to state any claim.[7] Moreover, the court notes that, on October 28, 2015, Judge Ramos granted Kazakhstan's motion for the issuance

---

[7] To be sure, in granting the motion for clarification, Judge Ramos observed, as a general matter, that Kazakhstan "may reapply for the imposition of an injunction against the use of the Stolen Materials by Respublika should it obtain sufficient evidence to support such an order." (Main Action ECF No. 57.) However, that order expressed no opinion regarding the propriety and timing of any particular discovery, let alone the type and scope of discovery sought here.

8

of letters rogatory to the New Zealand High Court for assistance in obtaining evidence from Mega, the host of the website where the Materials were first uploaded, to identify the persons who uploaded the Materials. (Main ECF Nos. 21, 60.) Additionally, as noted above, Kazakhstan has already been authorized to take the depositions of Ketebaev and the Respublika with respect to specified topics. Therefore, the court in the Main Action may well conclude that Kazakhstan should first be required to exhaust those discovery efforts before pursuing any expedited discovery from Facebook.

Furthermore, as referenced above, the proposed discovery from Facebook, which involves Respublika, a news organization, raises significant concerns regarding the reporter's privilege and the First Amendment. Kazakhstan contends that it does not seek journalistic information or content, such as reporter's notes, drafts, or communications. However, it does seek the names, email addresses, IP addresses, and MAC addresses of administrators and posters on the Respublika Facebook Page and the Ketebaev Facebook Page. Such persons may well be journalists, writers, and other staff or contributors to Respublika, whose identifying information and location may be entitled to protection, especially in light of the serious allegations of oppression and intimidation by Kazakhstan made by Respublika.[8] See, e.g., Bursey v. United States, 466 F.2d 1059 (9th Cir. 1972). This issue is likely to manifest with respect to several other discovery endeavors in the Main Action, including the depositions of Respublika and Ketebaev. In authorizing the Rule 30(b)(6) deposition of Respublika, Judge Pittman acknowledged as much, noting that numerous objections based on privilege were likely to be asserted, that the deposition transcript "may wind up being very thin," and that motion practice regarding the privilege issues would inevitably ensue. (See Main Action ECF No. 63.)

Consequently, the court finds that the above-mentioned issues are best resolved by the court in the Main Action, which is in a better position to globally guide the scope of discovery in

---

[8] To be clear, the court here need not, and does not, make any factual finding or determination that a campaign of oppression, intimidation, and harassment by Kazakhstan against Respublika actually exists—the court merely notes that such issues have been raised here as well as in other fora.

light of the full record and other discovery endeavors in that case.[9]  For those same reasons, even if this court had determined that the subpoena to Facebook was properly authorized, the court would have been strongly inclined to transfer the motion to the Southern District of New York pursuant to Federal Rule of Civil Procedure 45(f).  The court recognizes that the parties expended substantial time and effort in briefing the substantive issues raised by Kazakhstan's motion, but, fortunately, such effort is unlikely to have been wasted.  In the context of any future motion for authorization by Kazakhstan in the Main Action, the parties (including Respublika and Facebook) will have an opportunity to raise their respective arguments concerning the proposed discovery before the court in the Main Action.

CONCLUSION

Accordingly, for the reasons outlined above, IT IS HEREBY ORDERED that:

1. Kazakhstan's motion to compel (ECF Nos. 1, 6) is DENIED.
2. The November 12, 2015 subpoena issued by Kazakhstan to Facebook is QUASHED, but without prejudice to its reissuance at a later juncture upon appropriate authorization from the U.S. District Court for the Southern District of New York.
3. The Clerk of Court shall serve a copy of this order on the United States District Court for the Southern District of New York, referencing the case number of the Main Action, 1:15-cv-1900-ER-HBP, in the proof of service.
4. The Clerk of Court shall close this miscellaneous action.

IT IS SO ORDERED.

Dated:  March 3, 2016

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

---

[9] In providing the above preliminary and generalized discussion of the issues raised, the court expresses no opinion regarding how such issues should ultimately be resolved.